**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 18-cv-01934-CMA-SKC

ELET VALENTINE,

      Plaintiff,

vs.

PNC FINANCIAL SERVICES GROUP,
INC.; PNC BANK, NATIONAL
ASSOCIATION; PNC MORTGAGE,

      Defendant(s).

---

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants PNC Financial Services Group, Inc., PNC Bank, N.A., and PNC Mortgage, a division of PNC Bank, N.A., move to dismiss Plaintiff's Amended Verified Complaint [Doc. # 36] for failure to state a claim for which relief may be granted.[1]

## INTRODUCTION

This case arises from a loan transaction secured by real property located in Denver, Colorado, and the subsequent foreclosure on the property. Plaintiff filed this action, after entry of an Order by the state district court, in an attempt to prevent the foreclosure sale and avoid her mortgage obligations.

---

[1] The undersigned certifies that he has conferred with Plaintiff regarding the relief requested in this Motion and the basis for the relief requested pursuant to CMA Civ. Practice Standard 7.1D. Undersigned counsel conferred with Plaintiff by telephone on August 24, 2018, and discussed the basis for the Motion. While Plaintiff filed an amended complaint, the amended complaint did not address or remedy the issues identified during the conference.

Plaintiff's eleven claims fall into three general categories: (1) claims regarding the application of Plaintiff's payments, (2) claims regarding the calculation of Plaintiff's escrow account, and (3) claims relating to the foreclosure on the property.[2]

The primary theme of Plaintiff's Amended Complaint is that, at times, PNC initially deposited payments into a suspense account, and, once the funds equaled an amount sufficient to satisfy a payment, PNC withdrew those funds from the suspense account and applied those funds to the loan. The Amended Complaint appears to assert that PNC failed to disclose that it was placing funds it received into a suspense account, and that by first placing the funds in the suspense account, PNC failed to apply the funds to Plaintiff's loan. This allegation appears to serve as the primary basis for Plaintiff's claims for breach of promissory note (Second Claim), breach of deed of trust (Third Claim), fraudulent inducement (Fifth Claim), fraudulent concealment (Sixth Claim), fraudulent misrepresentation (Seventh Claim), and unfair and deceptive trade practices under the Colorado Consumer Protection Act (Tenth Claim).

Plaintiff also asserts that PNC failed to properly calculate the amounts to be paid to escrow and failed to provide her with an annual escrow statement (Third Claim). As part of her Third Claim, Plaintiff also argues that PNC is prohibited from foreclosing on its Deed of Trust by virtue of the statute of limitations.

---

[2]     Plaintiff withdrew two claims asserted in her original Complaint: violation of 42 U.S.C. § 1983 and violation of 15 U.S.C. § 45. However, Plaintiff attempts to add two new claims in her Amended Complaint: Second Claim (Breach of Promissory Note) and Tenth Claim (Violation of C.R.S. § 6-1-1101, *et seq.*). Plaintiff also transferred the allegations relating to her Statute of Limitations and Lien Extinguished claims (formerly the Tenth and Eleventh Claims) to her claim for Breach of Deed of Trust (Third Claim) (Doc. # 36, ¶¶ 160-205).

Lastly, Plaintiff asserts that PNC's actions to foreclose support her claims for unjust enrichment (Fourth Claim), abuse of process (Ninth Claim), and extreme and outrageous conduct (Eleventh Claim). Lastly, Plaintiff appears to assert that PNC Financial Services Group, the parent company of PNC Bank, N.A., is somehow liable for the actions of PNC Bank (Eighth Claim).

Plaintiff's claims are legally and factually deficient and lack substantial justification. Plaintiff's Second through Eleventh Claims for Relief should be dismissed for the following reasons:[3]

- To the extent Plaintiff seeks to challenge or overturn the state court's Rule 120 order, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine (Second and Third Claims).

- Plaintiff's claim for breach of contract fails because: (i) the state court already found that there is no factual basis for Plaintiff's allegations that PNC failed to apply payments to the Loan; (ii) the Amended Complaint fails to identify an affirmative obligation, which PNC allegedly violated; (iii) the Amended Complaint fails to allege a plausible claim for breach of contract relating to the escrow provisions of the Real Estate Settlement Procedures Act ("RESPA"); and (iv) the Amended Complaint fails to allege other facts to assert a plausible claim for breach of contract (Second and Third Claims).

---

[3] Plaintiff's First Claim for Relief does not assert an affirmative claim against Defendants, only allegations in an attempt to support equitable tolling of the statute of limitations.

- Plaintiff's claim that PNC has no right to foreclose on the Deed of Trust due to the statute of limitations fails because Plaintiff's promise to repay and subsequent payments served to renew the statute of limitations (Third Claim).

- The Amended Complaint fails to plead facts that would support a claim for unjust enrichment and an express contract covers the same subject (Fourth Claim).

- The Amended Complaint fails to plead any facts that would support a claim for fraud or misrepresentation, let alone with the required particularity under Fed.R.Civ.P. 9(b) (Fifth, Sixth and Seventh Claims).

- Plaintiff's claims for fraud and misrepresentation are barred by the economic loss doctrine (Fifth, Sixth and Seventh Claims).

- The Amended Complaint fails to allege any facts that would support a claim for vicarious liability against any of the Defendants (Eighth Claim).

- The Amended Complaint fails to allege any facts that would support a claim for abuse of process and PNC used the foreclosure for its intended purpose (Ninth Claim).

- The Amended Complaint fails to plead any facts that would support a claim under the Colorado Consumer Protection Act ("CCPA"), let alone with the required particularity under Fed.R.Civ.P. 9(b) (Tenth Claim).

- The Amended Complaint fails to allege any facts that would support a claim for extreme and outrageous conduct (Eleventh Claim).

**BACKGROUND**

**Original Loan Transaction**

On or about September 30, 2003, Plaintiff entered into a loan transaction with National City Mortgage Co d/b/a Commonwealth United Mortgage Company (the "Loan"). Plaintiff executed a promissory note, dated September 30, 2003, in the principal amount of $154,280.00 (the "Note"). *See* Ex. 1 (Note).[4] The Note is secured by a Deed of Trust, dated September 30, 2003, which was recorded with the Denver County Clerk and Recorder (the "Deed of Trust"). *See* Ex. 2 (Deed of Trust). The Deed of Trust provides a first lien on the property addressed as 12692 Hickman Pl., Denver, Colorado (the "Property"). PNC later acquired National City Mortgage Co. through a merger with National City Bank, and is the holder of the Note and beneficiary of the Deed of Trust. Ex. 3 (Affidavits of Merger); *see also* Doc. # 36, ¶ 10.[5]

**First Loan Modification**

Plaintiff became delinquent on her Loan in September 2009 by failing to make her monthly loan payments. On or about February 2010, PNC commenced a foreclosure through the Denver County public trustee. *See* Doc.# 36, ¶¶ 168-169. In 2010, PNC worked with Plaintiff to resolve this default and modify the loan terms. The parties entered into a Loan Modification Agreement, dated September 24, 2010,

---

[4]    In considering a motion to dismiss, the Court may consider (i) documents incorporated by reference in the complaint, (ii) documents referred to in and central to the complaint, and (iii) matters in which the Court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

[5]    The factual allegations in Plaintiff's Amended Complaint are assumed to be true only for purposes of this Motion. Defendants do not admit or concede the truth of Plaintiff's factual allegations for any other purpose.

through which PNC capitalized the accrued interest, escrow advance, and foreclosure expenses, and lowered the Borrower's monthly principal and interest payments through a lower interest rate and extended loan term. *See* Doc. # 36, ¶ 175; Ex. 4 (2010 Loan Modification). PNC subsequently withdrew the February 2010 foreclosure.

**Second Loan Modification and Reaffirmation**

Shortly after the 2010 Loan Modification, Plaintiff again defaulted on her Loan in 2011, and filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code. On October 23, 2012, the bankruptcy court granted PNC relief from the automatic stay. *See In re Valentine*, Case No. 11-26095-EEB, U.S. Bankr. Ct., D. Colo. at Doc. # 175. On or about November 30, 2012, PNC commenced a foreclosure through the Denver County public trustee. The bankruptcy case was dismissed without a discharge in June 2013. *Id.* at Doc. # 183. Shortly after the dismissal of the bankruptcy case, the parties entered into a second Loan Modification Agreement, dated July 9, 2013. The Loan's monthly principal and interest payments were substantially reduced through a lower interest rate and assistance from the Department of Housing and Urban Development ("HUD"). *See* Doc. # 36, ¶ 185; Ex. 5 (2013 Loan Modification).

On March 21, 2014, Plaintiff filed a second bankruptcy petition under Chapter 7 of the Bankruptcy Code. *See In re Valentine*, Case No. 14-13504-EEB, U.S. Bankr. Ct., D. Colo. at Doc. # 1. On or about May 13, 2014, Plaintiff reaffirmed the Loan and the Deed of Trust, and received an advisement from the bankruptcy court. *See id.* at Doc. ## 30, 33.

**Default on Loan**

In 2015, Plaintiff again became delinquent on the Loan for failing to timely make the required monthly payments. Nevertheless, PNC provided Plaintiff time to attempt to bring the Loan current. Plaintiff ultimately brought the Loan current in May 2017, with PNC waiving its fees and charges under the Deed of Trust. However, Plaintiff failed to make her monthly payments for June, July, and August 2017. *See* Doc. # 36, ¶ 200. Plaintiff then made a payment in September 2017, which was applied to her June 2017 monthly payment. *See* Ex. 6 at 2-3 (Transcript of Oral Ruling) (also attached to Pl's Mot. for Inj. [Doc .# 6].[6] Plaintiff has not made any payment toward the Loan since September 2017. *Id.*

**2018 Foreclosure and Rule 120 Proceeding**

On or about February 26, 2018, PNC filed a foreclosure proceeding through the Denver County Public Trustee. On April 25, 2018, PNC filed a Motion for Order Authorizing Sale with the District Court, City and County of Denver, pursuant to C.R.C.P. 120. On June 11 and 12, 2018, the state court conducted a Rule 120 evidentiary hearing at which both PNC and Plaintiff submitted documentary evidence and witness testimony. The state court ultimately found that (i) PNC was the real party in interest, (ii) there was a reasonable likelihood that Plaintiff was in default on the loan;

---

[6] Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Gee*, 627 F.3d at 1186. This includes another court's records "concerning matters that bear directly upon the disposition of the case at hand." *Hodgson v. Farmington City,* 675 Fed. Appx. 838, 840-41 (10th Cir. 2017); *see also St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts . . . may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). The oral and written orders entered by the state court (Ex 6 and Ex. 7) have a direct relation to this case, and may be properly considered by the Court.

(iii) no loan modification application was pending or requested, and (iv) Plaintiff was not subject to the Servicemembers Civil Relief Act. *See* Ex. 7 (Rule 120 Order); Ex. 6 (Transcript of Oral Ruling). In doing so, the state court rejected Plaintiff's allegations that PNC misapplied or failed to apply her payments and that she had in fact overpaid. The state court determined that there was no "factual basis" for Plaintiff's allegations. Ex. 6 at 3-5 (Transcript of Oral Ruling).

In addition, the state court expressly considered the affirmative defenses raised by Plaintiff. The state court examined Plaintiff's argument that PNC is barred by the statute of limitations from enforcing the Deed of Trust. *Id.* at 7. The state court expressly rejected that argument because the subsequent promises to pay made in the 2010 and 2013 Loan Modifications and the subsequent payments served to renew the statute of limitations. Ex. 7 (Rule 120 Order). The state court also rejected Plaintiff's argument that PNC cannot foreclose because the loan modifications were not recorded on the grounds that there is no requirement that loan modifications be recorded and because recording does not prohibit enforcement of the Deed of Trust as between Plaintiff and PNC. Ex. 7 (Rule 120 Order); Ex. 6 at 8-9 (Transcript of Oral Ruling).

## ARGUMENT

### A. Legal Standard

To withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and citation omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Fed.R.Civ.P. 8(a). *Iqbal*, 556 U.S. at 679 (quotation marks and citation omitted).

## B.     Plaintiff's Claims are Barred by the *Rooker-Feldman* Doctrine.

The Court should dismiss any claims that seek to challenge or overturn the state court's order in the Rule 120 proceeding under the *Rooker-Feldman* doctrine. "*Rooker–Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (citations omitted). Such prohibited review of state court judgments "includ[es] those that authorize and confirm the sale of property." *Yokomizo v. Deutsche Bank Securities, Inc.*, No. 11-cv-01630-CMA-KLM, 2011 WL 5024899, at *5 (D. Colo. Oct. 21, 2011).

In her Amended Complaint, Plaintiff alleges: (i) that she is not in default under the Note because PNC failed to apply her payments through use of a suspense account, and (ii) that PNC is prohibited from enforcing the Deed of Trust pursuant to the six-year statute of limitations set forth in C.R.S. § 13-80-103.5 and C.R.S. § 38-39-207. These arguments were expressly considered and rejected by the state court in the Rule 120 hearing, which, Plaintiff seeks to reverse through this action.

This Court's decision in *Beeler Properties, LLC v. Lowe Enterprises Residential Investors, LLC*, No. 07-cv-00149-MSK-MJW, 2007 WL 1346591 at *2 (D. Colo. May 7, 2007) and *Grigat v. Mortgage Lenders Network, USA*, No. 17-cv-01305, 2017 WL 4251943, *3 (D. Colo. Sept. 26, 2017) are on point. After a careful and detailed analysis of the Colorado foreclosure process and the *Rooker-Feldman* doctrine, the Court in *Beeler* held that the court was precluded from determining the issues presented. The Court explained that the Court must abstain from an independent action challenging a Rule 120 order pursuant to the *Rooker-Feldman* doctrine because the Court "is being asked to conduct an appellate like review over the Rule 120 order authorizing the sale." *Beeler Properties*, 2007 WL 1346591, *3. Similarly, the *Grigat* court analyzed and applied the doctrine in the context of non-judicial foreclosures. *Grigat,* 2017 WL 4251943 at *4.

As in *Beeler* and *Grigat*, Plaintiff here asks the Court to conduct an appellate-like review of the state court's order in the Rule 120 hearing. Plaintiff challenges the state court's determination that there was a reasonable likelihood of a default on the Note, and challenges the state court's rejection of her statute of limitations argument.

Therefore, the Court should refrain from consideration of the merits of Plaintiff's collateral attack on the state court's judgment.

**C.**     **Plaintiff Has Not Alleged a Plausible Claim for Breach of Contract.**

A breach of contract claim has four elements: (1) the existence of a contract; (2) performance by the plaintiff or justification for nonperformance; (3) failure to perform by the defendant; and (4) resulting damage to the plaintiff.  *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011).

Although the basis for Plaintiff's claim for breach of contract is not entirely clear, the Amended Complaint appears to assert that PNC breached the Note and Deed of Trust by (i) failing to properly apply payments (Doc. # 36, ¶¶ 111-125, 154-156); (ii) failing to properly calculate escrow charges and failing to mail an annual escrow statement (Doc. # 36, ¶¶ 139-148); and (iii) failing to disclose certain information on monthly statements as purportedly required by certain federal regulations (Doc. # 36, ¶¶ 149-152).  The Amended Complaint also appears to argue that PNC is barred from enforcing the Deed of Trust under the statute of limitations.  Doc. # 36, ¶¶ 159-206.

The Court should dismiss Plaintiff's breach of contract claim because Plaintiff seeks appellate-like review of the state court's Rule 120 order, Plaintiff's allegations are contradicted by the documents attached to the Amended Complaint, the Amended Complaint fails to identify any contractual provision or obligation that PNC has breached, and the Amended Complaint fails to assert sufficient factual allegations to support a claim for breach of contract.  In addition, PNC cannot be barred from

enforcing the Deed of Trust because Plaintiff's reaffirmations and payments renewed the statute of limitations.

1.  Plaintiff Fails to Assert Sufficient Facts to Establish a Claim for Breach of Contract Based on the Application of Payments, and Any Such Claim Would be Barred Under the *Rooker–Feldman* Doctrine.

To the extent Plaintiff alleges that PNC breached the Note and Deed of Trust through its application of payments, that claim seeks to attack and overturn the state court's judgment that PNC properly applied any payments received and that Plaintiff is in default of the Note and Deed of Trust.  The state court already found that Plaintiff's allegations that PNC misapplied or failed to apply her payments had no factual basis.  Ex. 6 at 3-5 (Transcript of Oral Ruling).  Plaintiff's claim that PNC failed to properly apply the payments directly challenges the state court's rulings in the foreclosure action, which is barred by the *Rooker-Feldman* doctrine.  *See Beeler Properties, LLC,* 2007 WL 1346591 at *2

While the Amended Complaint asserts that PNC did not apply partial payments pursuant to HUD Guidelines (Doc. # 36, ¶¶ 111, 121), Plaintiff's allegations are contrary to the documents attached to the Amended Complaint.  "If [the] documents contradict the allegations of the ... complaint, the documents control and [the] court need not accept as true the allegations in the ... complaint."  *Cunningham v. Bank of America, N.A.*, 2013 WL 2455945, *4 (D. Colo. June 6, 2013 (quoting *Rapoport v. Asia Electronics Holding Co.*, 88 F.Supp.2d 179, 184 (S.D.N.Y.2000); *see also Rader v. Citibank N.A.*, 700 Fed. Appx. 817, 820 (10th Cir. 2017).

The Amended Complaint identifies certain lines in Exhibits 29 through 38 (which are spreadsheets created by Plaintiff) that Plaintiff alleges purports to be payments received by PNC, but not applied to the Loan. However, for each line cited by Plaintiff as evidence of a payment not properly credited to the Loan, there is an entry in the PNC payment history evidencing credit of that payment to the Loan. For example, Plaintiff asserts that she made a payment on or about November 4, 2016, in the amount of $895 that she claims was not credited to her Loan. Doc. # 36, ¶ 119. However, a quick review of the PNC payment history for 2016, attached to the Amended Complaint as Exhibit 60, affirmatively shows that the payment was received, was placed into a suspense account, and, was applied to the Loan the very next day. Doc. #36-42 at p. 5 of 7. The second column of the payment history shows a process date of "11-03" with an amount received of $895. That entry shows that the funds were initially placed into suspense. The following entry, with a process date of "11-04" shows that the funds were removed from suspense and applied to the payment due September 2016, with $225.35 applied to principal, $377.21 applied to interest, $292.44 into escrow. *Id.*

As explained during the state court Rule 120 hearing, and as found by the state court, PNC's payment history identified receipt of payment, deposit into the suspense account, withdrawal of the funds from the suspense account, and application to the Loan. As found by the state court, the documents attached to the Amended Complaint affirmatively show that PNC properly applied Plaintiff's payments to the Loan, and that Plaintiff has not made a payment since September 2017. *See* Ex. 6 at 2-3 (Transcript of Oral Ruling).

Lastly, the Amended Complaint fails to assert facts to show that Plaintiff performed her obligations under the Note and Deed of Trust or that she had been damaged as a result of PNC's actions. In fact, Plaintiff has conceded that she has failed to perform her obligations under the Note and Deed of Trust in that she has not made a payment toward her Loan since September 2017. *See id.*; *see also* Doc.# 36-43, p. 4 of 5 (showing last payment made was September 2017). In addition, the Amended Complaint asserts only generally that Plaintiff has been damaged (Doc. # 36, ¶¶ 126, 206 93), but that damage appears to be the result of the foreclosure following Plaintiff's default, not as a proximate result of PNC's alleged breach.

2.    The Amended Complaint Fails to Allege Sufficient Facts to Assert a Claim for Breach of Contract Based on the Alleged Violation of HUD Guidelines and Failure to Disclose Certain Information.

To the extent Plaintiff alleges that PNC breached the Deed of Trust by failing to disclose certain information in loan statements, Plaintiff's claim fails because Plaintiff has not identified and cannot identify any contractual provision that she contends PNC breached. *See Arrow Elecs., Inc. v. Syntellus Dataworks, LLC*, 2013 WL 1768687, *3 (D. Colo. April 24, 2013) (dismissing breach of contract claim because plaintiffs failed to plead the relevant terms of the contract, whether plaintiffs performed under the contract, and factual allegations to support a claim that defendant breached the contract); *Stender v. Gerardi*, No. 07-cv-02503-EWN-MJW, 2008 WL 4452117, *13 (D. Colo. Sept. 30, 2008) (plaintiffs failed to state a claim for breach of contract "relating to alleged liquidity or dividend rights because they have not adequately indicated which provisions of which contracts allegedly contain such rights"); *Shah v. Wilco Sys., Inc.*,

126 F. Supp. 2d 641, 653 (S.D.N.Y. 2000) (holding that plaintiff failed to provide defendant notice of the contractual provision allegedly breached).

There is no contractual obligation that PNC provide Plaintiff with a loan statement or to disclose whether a payment was first placed into a suspense account before it was applied to the Loan. And, Plaintiff identifies no contractual obligation to do so. Rather, Plaintiff asserts that because PNC allegedly violated a certain federal regulation or HUD Guidelines, that may or may not apply, PNC must have breached the Deed of Trust. Doc. # 36, ¶¶ 94-111, 149-152.

Even if PNC failed to comply with the alleged federal regulations or HUD Guidelines (which PNC denies), that alleged failure cannot support an affirmative claim for breach of contract. Generally, a party may not rely on a statute or regulation to state a breach of contract claim when the underlying contract does not expressly incorporate the statute or regulation. *See, e.g., Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016) ("HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement.")[7] Neither the HUD Guidelines nor Section 1026.41 were expressly incorporated into the Note or Deed of Trust. Indeed, the federal regulation regarding suspense accounts referenced in the Amended Complaint could not have been incorporated into the Deed of Trust since it was not even proposed by the Consumer

---

[7] Even if the regulations or HUD Guidelines were expressly incorporated into the Deed of Trust, this Court has found that there is no affirmative claim for relief for an alleged violation, only a defense to foreclosure. *See Christenson v. CitiMortgage, Inc.*, No. 12-cv-2600-CMA-KLM, 2013 WL 5291943 (D. Colo. June 17, 2013) (finding that HUD regulations are conditions precedent and cannot serve as affirmative claims for relief).

Finance Protection Bureau until <u>after</u> the Deed of Trust was executed. *See, e.g.* 78 FR 11007 (Feb. 14, 2013).

Because Plaintiff has not asserted any facts to show that PNC breached a particular provision of the Note or Deed of Trust, the Court should dismiss Plaintiff's Second and Third Claims.

3.    The Amended Complaint Fails to Assert a Plausible Claim for Breach of Contract Based on Escrow Calculations.

To the extent Plaintiff alleges that PNC breached the Deed of Trust through its escrow calculations, the Court should dismiss Plaintiff's claim. As set forth above, Plaintiff does not identify any contractual provision that she contends PNC breached in connection with her escrow account. For this reason alone, the Court should dismiss Plaintiff's Third Claim. *See Arrow Elecs., Inc.*, 2013 WL 1768687, *3.

More importantly, the Amended Complaint fails to identify the alleged actions by PNC that Plaintiff asserts comprise the breach (*i.e.*, the alleged acts that violate the Deed of Trust and when those acts occurred). For example, the Amended Complaint fails to allege how PNC allegedly miscalculated her escrow payments, how those alleged miscalculations violated the Deed of Trust, and how those alleged actions proximately caused any damage to Plaintiff. *See McNeal v. J.P. Morgan Chase Bank, N.A.*, No. 16 CV 3115, 2016 WL 6804585, *9 (N.D. Ill. Nov. 17, 2016) (dismissing claim because borrower failed to allege how escrow statements were inaccurate or improper).

In addition, there is no private right of action under the statutory and regulatory regime identified by Plaintiff regarding the collection and notification of her escrow account. Under 12 U.S.C. § 2609, RESPA sets forth certain collection and notification

requirements regarding mortgage-related escrow accounts established for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property. It is well-established that no private right of action exists under § 2609. *See Snider v. B.A.C. Homes Loans Servicing LP,* 2011 WL 4479280, *6 (D. Colo. Sept. 26, 2011) (citing *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006)). Plaintiff cannot circumvent the statutory regime through an inadequately plead breach of contract claim.

      4.    <u>PNC is Not Barred From Enforcing the Note and Deed of Trust.</u>

Plaintiff asserts that since PNC accelerated the loan in February 2010, the six-year statute of limitations set forth in C.R.S. § 13-80-103.5 serves to bar PNC from enforcing the Note. *See id.* at ¶ 152. Plaintiff then alleges that if PNC is barred from enforcing the Note, then it is also barred from enforcing the Deed of Trust under C.R.S. § 38-39-207. *See id.* at ¶ 187. As the state court has already found, Plaintiff's argument fails as a matter of law.

Generally, the period for initiating an action to recover a debt expires six years after the cause of action accrues. *See* C.R.S. §§ 13-80-103.5(1)(a), 108. However, as re-affirmed by the Colorado Supreme Court, since early common law, "it has been universally accepted that a new promise to pay effectively removes the bar of any applicable statute of limitations." *Hutchins v. La Plata Mountain Resources, Inc.*, 373 P.3d 582, 585 (Colo. 2016). "That an implicit promise to pay, either in the form of a partial payment, *see, e.g., Hickerson v. Vessels*, 2014 CO 2, ¶ 19, 316 P.3d 620, 625, or an acknowledgment [in writing and signed by the promisor], *see, e.g., Drake v. Tyner*,

914 P.2d 519, 522 (Colo. App. 1996), will extend the statute of limitations has remained, largely unquestioned, the law of this jurisdiction." *Id.* "When part payment on a debt is made before the limitations period expires, such payment starts the statute of limitations running anew because such payment alone may be sufficient acknowledgment of the promise to pay the remainder." *Drake*, 914 P.2d at 523; *see Obduskey v. Wells Fargo Bank*, Case No. 15-cv-01734-RBJ, 2016 WL 4091174 at *7 (D. Colo. July 7, 2016) (payments tolled the statute of limitations).

As this Court has found, the law and concepts set forth in *Hutchins* and *Drake* equally apply to consumer loans. In *Obduskey*, the plaintiff-borrower argued that the lender's foreclosure proceeding was barred by the statute of limitations. Before foreclosure proceedings had commenced, the borrower applied for and made trial payments under the Home Affordable Modification program ("HAMP"). *Id.* at *1, 7. A foreclosure was commenced more than six years after the initial default but less than six years after the trial payments. The Court found that the borrower's voluntary payments during the HAMP trial period renewed the statute of limitations. *See id.* at *7.

Similarly, in *Christenson v. CitiMortgage, Inc.*, this Court found that the plaintiff-borrowers' payments through their Chapter 13 bankruptcy plan and regular monthly payments during the bankruptcy case "undoubtedly 'renewed' the statute of limitations on plaintiffs' debt." 255 F. Supp. 3d 1099, 1109 (D. Colo. 2017). Applying *Hutchins* and *Drake*, this Court dismissed the plaintiff-borrowers' claim on a motion to dismiss.

In the present case, Plaintiff re-affirmed the debt and made a promise to repay on two separate occasions following the February 2010 foreclosure proceeding: the

2010 Loan Modification and the 2013 Loan Modification.  These agreements alone are

sufficient to renew the statute of limitations under Colorado law.  More importantly,

Plaintiff made payments on the debt into May 2017, with an additional payment made in

September 2017.  Therefore, the statute of limitations does not bar PNC's enforcement

of the Note or Deed of Trust, and the Court should dismiss Plaintiff's Third Claim.

**D.**     **The Amended Complaint Fails to State a Claim for Unjust Enrichment.**

Unjust enrichment is a quasi-contractual, equitable remedy designed to undo a

benefit conferred on one party at the unfair expense of another party.  *Lewis v. Lewis*,

189 P.3d 1134, 1141 (Colo. 2008).  To prevail on an unjust enrichment claim, Plaintiff

must allege sufficient facts to show:  (1) at plaintiff's expense (2) defendant received a

benefit (3) under circumstances that would make it unjust for defendant to retain the

benefit without paying.  *DCB Const. Co., Inc. v. Central City Development Co.*, 965 P.2d

115, 119-120 (Colo. 1998).

As an initial matter, Plaintiff's Fourth Claim should be dismissed because an

express contract covers the same subject matter as Plaintiff's unjust enrichment claim.

Plaintiff admits that she entered into a consumer contract (*i.e.* the Note and Deed of

Trust), regarding the loan transaction.  Doc. # 36, ¶¶ 86, 131, 208.  This contract

governs the rights and responsibilities of the parties to the loan transaction.  As such,

Plaintiff can make no claim for unjust enrichment in connection with any aspect of the

loan transaction.  *See Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64,

¶¶62-64 (Sept. 26, 2016) (plaintiff cannot recover for unjust enrichment when express

contract covers the same subject matter.)

In addition, the Amended Complaint fails to allege sufficient facts to show a plausible claim for unjust enrichment.  The Amended Complaint fails to allege how PNC could be unjustly enriched at Plaintiff's expense by receipt of interest, late charges and other fees allegedly received under the express terms of the Note and Deed of Trust, particularly where Plaintiff admits that she has defaulted on her obligations.  Rather, Plaintiff appears to argue that PNC would be unjustly enriched because the market value of the Property exceeds the current principal balance of the Loan.  Again, the Amended Complaint fails to allege how PNC could be unjustly enriched at Plaintiff's expense in this regard.  Plaintiff has an affirmative obligation to repay the principal amount of the Loan with interest pursuant to the terms of the Note and expressly agreed that if she did not repay the Loan, PNC could foreclose on the collateral to repay the outstanding debt.  The Amended Complaint fails to allege any facts to establish a claim for unjust enrichment that is plausible on its face.

**E.**     **The Amended Complaint Fails to Plead Fraud and Misrepresentation with the Required Particularity under Fed.R.Civ.P. 9(b).**

A claim for fraud requires a plaintiff to prove that (1) the defendant knowingly made a false representation of material fact; (2) plaintiff was unaware of its falsity; (3) the representation was intended to induce plaintiff to act; and (4) plaintiff was damaged by acting in reliance on the representation.  *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012) . Under Fed.R.Civ.P. 9(b), "fraud or mistake" must be pled with particularity, meaning that a plaintiff must, at the minimum, "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *U.S. ex rel. Sikkenga v. Regence*

*BlueCross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006). Mere conclusory allegations of falsity are insufficient; a complaint must explain why something is false or misleading. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997).

Plaintiff does not specifically allege any false or misleading statement, why any such statement is false, when any allegedly false statement occurred, or who allegedly made such false statement. Rather, Plaintiff asserts that PNC failed to provide complete information in its monthly mortgage statements regarding Plaintiff's loan payments. Specifically, Plaintiff alleges that PNC failed to disclose that "funds were being transferred to and withdrawn from the suspense account" in the monthly statements (Doc. # 36, ¶ 227), concealed that "payment(s) were immediately transferred to the suspense account" (Doc. # 36, ¶¶239, 244), and "fraudulently misrepresented payments, partial payments and other funds which were transferred to and withdrawn from the suspense account/unapplied funds account" (Doc. # 36, ¶ 253).

Such general statements fail to satisfy the heightened pleading requirement of Fed.R.Civ.P. 9(b). Nothing in the Amended Complaint identifies the specific representations that were allegedly made, when those representations were allegedly made, or how those representations were allegedly false. In fact, Plaintiff affirmatively alleges that she did not receive monthly statements for years. Doc. # 36, ¶ 248. It would be difficult for PNC to determine which loan statement may have contained allegedly false information, what that allegedly false information was, or when that statement was allegedly sent.

In any event, Plaintiff's allegations are contrary to the express language of the loan statements. *See Cunningham v. Bank of America, N.A.*, 2013 WL 2455945, *4 (D. Colo. June 6, 2013) ("If [the] documents contradict the allegations of the ... complaint, the documents control and [the] court need not accept as true the allegations in the ... complaint.") The loan statements expressly provide that funds received by PNC during the statement period were deposited into a suspense account and then were withdrawn from the suspense account and applied to the Loan. *See, e.g.*, Ex. 8 (Loan Statement). For example, in Ex. 8, the statement shows receipt of a payment on November 3, 2016. The statement provides that the payment was received and unapplied. The statement then shows that the payment was applied to the Loan on November 4, 2016 effective as of the date received, and the manner in which the payment was applied. Ex. 8 at p. 2.

There is nothing improper, let alone fraudulent, about depositing funds into a suspense account before those funds are later applied to the Loan, particularly where the borrower is in default for failing to repay the loan. Moreover, the mortgage loan statements expressly provided this information to Plaintiff.

The Amended Complaint also fails to assert any facts to show that any alleged representation was made to induce Plaintiff to act or that Plaintiff detrimentally relied on any alleged misrepresentation. All of the alleged loan statements were provided to Plaintiff <u>after</u> Plaintiff had entered into the Loan. Thus, there is no indication that the loan statements were intended to induce Plaintiff to act other than in accordance with the terms of the existing Note and Deed of Trust.

Plaintiff appears to assert that she relied upon the loan statements to enter into the 2010 and 2013 Loan Modifications. Plaintiff alleges that had she known that funds were deposited into a suspense account, she would not have entered into the 2010 and 2013 Loan Modifications. Doc. # 36, ¶¶ 228-229. However, even if that allegation were true, the 2010 and 2013 Loan Modifications were for Plaintiff's benefit. Had Plaintiff not entered into those Loan Modifications, Plaintiff would have been in default of the Note and Deed of Trust, and PNC would have been entitled to foreclose on the Property. In addition, Plaintiff benefitted from the Loan Modifications through reduced interest rates, capitalization of accrued, unpaid interest and fees, and an extended repayment period. *See* Exs. 4 & 5 (2010 and 2013 Loan Modifications). Moreover, Plaintiff's purported reliance could not have been justified. Plaintiff was in as good a position to know what payments she made on the loan, and did not need to rely upon the loan statements for that determination.

Because Plaintiff fails to plead a claim for fraud, let alone with the required particularity, Plaintiff's claims for fraudulent inducement, fraudulent concealment, and misrepresentation should be dismissed.

**F.**    **Plaintiff's Claims for Fraud and Misrepresentation Should be Dismissed Under the Economic Loss Rule (Fifth, Sixth and Seventh Claims).**

To the extent the alleged representations or omissions arise from a contractual duty, Plaintiff's claims for fraud and misrepresentation are also precluded by the economic loss rule. "A party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10

P.3d 1256, 1264 (Colo. 2000). Even where a separate tort duty exists, the economic loss rule bars a tort claim if that same duty is also imposed by the parties' contract. *See A Good Time Rental, LLC v. First American Title Agency, Inc.,* 259 P.3d 534, 541 (Colo. App. 2011) ("[E]ven a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract . . . .") (citations omitted).

Here, Plaintiff's fraud and misrepresentation claims are based on PNC's alleged application of Plaintiff's payments under the Note and Deed of Trust and statements regarding the manner of that application. Plaintiff alleges that PNC failed to properly apply payments and failed to disclose funds transferred to and withdrawn from the suspense account. These alleged misrepresentations or omissions are not independent of PNC's alleged contractual duties to apply payments received in accordance with the Note and Deed of Trust. Rather, the alleged statements or omissions implicate performance of contract terms not matters extrinsic to the contract.

**G.    Plaintiff Cannot Maintain a Claim for Vicarious Liability.**

Although Plaintiff's Eighth Claim is titled "Vicarious Liability," it is unclear what Plaintiff's Eighth Claim purports to assert or under what legal theory it purports to fall. "Vicarious liability is a special form of secondary liability whereby an employer is liable for the torts of its employees when they are acting within the scope of their employment." *Semler v. Hellerstein*, 2016 COA 122, ¶ 47 (Aug. 25, 2016). "In order to find the employer liable, the court must first find the employee liable." *Id.*

At best, the Amended Complaint could be read to attempt to assert that PNC Bank should be held liable because employees may have violated a Consent Order or

federal regulations. However, the Amended Complaint fails to identify the alleged Consent Order or the federal regulations that were allegedly violated, the alleged actions that form the premise of the violation, the employee who allegedly committed the violation, and whether that employee was acting within the scope of his or her employment. Plaintiff has failed to allege any facts sufficient to support a plausible claim for vicarious liability against PNC Bank.

Since this is the only claim in which Plaintiff identifies PNC Financial Services Group, it appears that Plaintiff may be attempting to hold PNC Financial Services Group liable for any claims asserted against PNC Bank. Under this theory, Plaintiff's claim fails because PNC Financial Services Group cannot be held vicariously liable for the claims against PNC Bank, N.A. absent factual allegations to support an alter-ego or piercing the corporate veil theory, neither of which are asserted here. A "parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004). Further, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiary[.]" *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998) (internal quotations omitted). Since the Amended Complaint fails to assert any facts or claims that could support piercing the corporate veil, the Court should dismiss Plaintiff's Eighth Claim, and at the very least should dismiss PNC Financial Services Group.

**H.** **Plaintiff Cannot Maintain a Claim for Abuse of Process.**

To state a claim for abuse of process under Colorado law, Plaintiff must show: (i) that the Defendants invoked a judicial process; (ii) that they did so with an ulterior purpose; (iii) that their use of the process was in a manner that was inconsistent with its proper use; and (iv) that the Plaintiff suffered damage as a result. *Moore v. Western Forge Corp.*, 192 P.3d 427, 438 (Colo. App. 2007). Abuse of process lies where a party invokes legal proceedings not for their intended purpose, but in an effort to obtain collateral results that would not be available by the normal operation of such proceedings. *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994), citing Restatement, 2d Torts, § 682, cmt. b (no claim lies "when the process is used for the purpose for which it is intended").

The Amended Complaint fails to identify any purported ulterior purpose or motive for PNC in filing foreclosure proceedings. Rather, Plaintiff alleges that PNC abused the judicial process by filing unwarranted notices of election and demand, a "false Rule 120 Hearings [sic]," and "improper foreclosure proceeding[s]." Doc. # 36 at ¶¶ 282-297. As explained in *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1122-23 (D. Colo. 2010), the use a foreclosure proceeding following a dispute over whether the loan is in default does not constitute an ulterior purpose. PNC pursued the foreclosure in light of what PNC asserted and what the state court found to be a default under the Note and Deed of Trust. This is the intended purpose of the Rule 120 and public trustee foreclosure proceedings. *Tara Woods Ltd. P'ship*, 731 F. Supp. 2d at 1122-23

("The purpose of foreclosure is to ensure that the lender receives full payment of the debt or . . . to take possession of the collateral . . . .")

While Plaintiff argues that there was no default under the Loan, this does not change the fact that PNC was using the foreclosure process for its intended purpose – to take possession of the collateral. Even if the Amended Complaint did in fact allege an ulterior motive (it does not), the presence of an ulterior motive does not give rise to a cause of action where, as here, the process is invoked for its normal purpose. *Id.*

## I. Plaintiff Has Not Alleged a Claim for Violation of the CCPA.

Plaintiff's claim for violation of the CCPA should be dismissed because the Amended Complaint fails to plead the elements of a CCPA claim with the required particularity under Fed.R.Civ.P. 9(b). *See Cavitat Med. Techs., Inc. v. Aetna, Inc.*, No. 04-cv-01849, 2006 WL 218018, at *3 (D. Colo. Jan. 27, 2006) (holding that claims under § 6-1-105 of the CCPA must be pled with particularity pursuant to Fed.R.Civ.P. 9(b)); *Duran v. Clover Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) (holding that "Rule 9(b)'s requirement of particularity applies to plaintiffs' allegations of deceptive trade practices under the Colorado Consumer Protection Act.").

To establish a claim under the CCPA, Plaintiff must show: (1) that PNC engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of PNC's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that Plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused Plaintiff's injury. *See Rhino Linings USA, Inc. v. Rocky*

*Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003); *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). Moreover, the alleged misrepresentation or false representation "must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers." *Rhino Linings*, 62 P.3d at 147.

Plaintiff has failed to allege with sufficient particularity that PNC engaged in a deceptive trade practice, that Plaintiff acted in reliance on the alleged practice, or that any such practice had a significant public impact.

Like Plaintiff's fraud and misrepresentation claims, Plaintiff's claim for violation of the CCPA is based on the alleged failure to disclose information regarding the use of a suspense account in the mortgage loan statements. The Court should dismiss Plaintiff's CCPA claim for the same reasons it should dismiss Plaintiff's fraud and misrepresentation claims.

First, nothing in the Amended Complaint identifies the specific representations that were allegedly made, when those representations were allegedly made, or how those representations were allegedly false sufficient to satisfy the heightened pleading requirements for a claim under the CCPA. In any event, as discussed above, Plaintiff's allegations are contrary to the express language of the loan statements. The loan statements expressly provide that funds received by PNC during the statement period were deposited into a suspense account and then were withdrawn from the suspense account and applied to the Loan. *See, e.g.*, Ex. 8 (Loan Statement). There is nothing improper, let alone deceptive, about depositing funds into a suspense account before

those funds are later applied to the Loan, particularly where the borrower is in default for failing to repay the loan.

The Amended Complaint also fails to assert any facts to show that any alleged representation was made to induce Plaintiff to act or that Plaintiff detrimentally relied on any alleged misrepresentation. All of the alleged loan statements were provided to Plaintiff <u>after</u> Plaintiff had entered into the Loan. Thus, there is no indication that the loan statements were intended to induce Plaintiff to act other than in accordance with the terms of the existing Note and Deed of Trust.

Second, the Amended Complaint fails to allege any facts sufficient to satisfy the significant public impact requirement under the CCPA. Plaintiff has not identified and cannot identify the potential number of consumers involved, the relative sophistication of the consumers, or any of the other factors to determine a significant public impact as required for a claim under the CCPA. *See Rhino Linings USA, Inc.*, 62 P.3d at 149; *Martinez v. Lewis*, 969 P.2d 213, 215 (Colo. 1998) (listing considerations to determine public impact under CCPA). Plaintiff has not alleged and cannot show how many FHA-insured loans were or were not subject to the use of a suspense account, the effect of the suspense account, if any, or whether any such borrowers knew or did not know of the use of a suspense account. *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1113 (10th Cir. 2009) (affirming summary judgment on borrower's CCPA claim because the borrowers presented no evidence that challenged practice had previously impacted other consumers or had the significant potential to do so in the future.)

Plaintiff's claim is based solely on the fact that, following a default on the Loan, PNC initially deposited partial payments into a suspense account, before applying such payments to the Loan, and allegedly failing to disclose this practice to Plaintiff. At best, Plaintiff's CCPA claim involves only alleged misconduct with regard to her private loan. Plaintiff has not established that the alleged misconduct affected or had the potential to affect a significant number of consumers to meet the significant public impact requirement. *See Rhino Linings USA, Inc.,* 62 P.3d at 149 (a wrong that is "private in nature, and does not affect the public," does not give rise to liability under the CCPA).

**J.      Plaintiff Has Not Alleged a Claim for Extreme and Outrageous Conduct.**

To state a claim for infliction of emotional distress by extreme and outrageous conduct, a plaintiff must establish that "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002). To rise to the level of "extreme and outrageous" conduct, the alleged behavior must be "atrocious and utterly intolerable in a civilized community." *First Nat'l Bank v. Collins*, 616 P.2d 154, 156 (Colo. App. 1980). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002).

Here, Plaintiffs have not alleged "extreme and outrageous" conduct. The only alleged misconduct by PNC was its initiation of foreclosure proceedings when Plaintiff contests the alleged default under the Note and Deed of Trust, which does not rise to

the requisite level of atrocity.  *See Ramsey v. Citibank, N.A.*, No. 10-cv-02653, 2011 U.S. Dist. LEXIS 110957, at *14-15 (D. Colo. Sept. 28, 2011) (foreclosure did not rise to the level of intentional infliction of emotional distress).  The Court should dismiss Plaintiff's claim for extreme and outrageous conduct.

<u>**CONCLUSION**</u>

For the reasons set forth above, PNC respectfully requests that the Court dismiss Plaintiff's Amended Complaint [Doc. # 36] in its entirety, and for such other and further relief as the Court deems just and appropriate.


Dated: September 27, 2018

Respectfully submitted,

BALLARD SPAHR LLP

By:  */s/ Patrick H. Pugh*
Patrick H. Pugh, #36774
1225 Seventeenth Street, Suite 2300
Denver, Colorado  80202-5596
Telephone:  303-292-2400
Facsimile:  303-296-3956
pughp@ballardspahr.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 27th day of September, 2018, service of the foregoing **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** was effected by depositing a copy in the United States mail, first class postage prepaid, and via email to the following:

Elet Valentine
PO Box 390281
Denver, CO 80239
evalentine@live.com

*/s/  Lisa Ray*
Lisa Ray